UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY JANE OWEN,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No. 10-01540 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

  Plaintiff Mary Jane Owen filed a Complaint alleging that the defendant United States of America is liable for damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, because the plaintiff was injured using a wheelchair lift negligently maintained and operated by an unknown employee of the John F. Kennedy Center for the Performing Arts ("Kennedy Center").[1]  *See* Complaint ("Compl."), ECF No. 1, ¶¶ 1, 6, 8-10. Following a period of discovery, the defendant filed a Motion for Summary Judgment in which it argues, *inter alia*, that the plaintiff has not made out a *prima facie* case of negligence.  *See* ECF No. 13.  For the reasons explained below, the Court agrees and will GRANT the defendant's motion for summary judgment.

---

[1] "[T]he Kennedy Center constitutes a federal agency covered by the FTCA." *Polcari v. John F. Kennedy Ctr. for Performing Arts*, 712 F. Supp. 230, 231-32 (D.D.C. 1989) (citing 20 U.S.C. §§ 76h, *et seq.*); *accord Makarova v. United States*, 201 F.3d 110, 113-14 (2d Cir. 2000).

**I. FACTUAL AND PROCEDURAL HISTORY[2]**

The plaintiff is a former employee of SD&A Teleservices, Inc. ("SD&A"). *See* Def.'s Statement of Facts Not in Material Dispute ("Def.'s Facts"),[3] ECF No. 13-3, ¶ 1; Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 14-3, at 2. SD&A is a private "telemarketing firm retained by the Kennedy Center to conduct on-site telephone solicitation and fundraising campaigns." Def.'s Facts ¶ 1; Pl.'s Opp'n at 2.[4] The plaintiff at the time of the incident at issue in this lawsuit worked in an SD&A office located on what is known as the "second tier" of the Kennedy Center building. *See* Def.'s Facts ¶ 2; Pl.'s Opp'n at 2.

The plaintiff has been a partial quadriplegic since 1986 and "is confined to her motorized wheelchair for most of the day." Def.'s Facts ¶ 5; Pl.'s Opp'n at 2. At all times relevant to this action, the plaintiff "used a Pronto M91 model motorized wheelchair manufactured by the Invacare Corporation." Def.'s Facts ¶ 6 (citing Deposition of Mary Jane Owen ("Owen Dep."), ECF No. 13-5, at 15-16; Expert Report of Jeffrey E. Fernandez, Ph.D. ("Fernandez Report"), ECF No. 13-7, at 7). The wheelchair in its entirety—the frame plus the battery—weighs 273 pounds. *See* Def.'s Facts ¶ 8 (citing Fernandez Report at 7). The plaintiff at the time of the incident weighed approximately 222 pounds, so the combined weight of the plaintiff and the

---

[2] The Complaint alleges minimal factual allegations and the plaintiff failed to file "a separate and concise statement" of facts that points to "genuine issue[s] necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." Local Civil Rule 7(h)(1). The Court relies heavily on the Defendant's Statement of Facts, *see* ECF No. 13-3, and "will treat all of the factual assertions in the [Defendant's] Statement of Material Facts Not in Dispute as undisputed." *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 146 (D.D.C. 2011); *see also* FED. R. CIV. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

[3] The defendant titled both ECF Nos. 13-2 and 13-3 "Defendant's Memorandum of Points and Authorities in Support of the Motion for Summary Judgment." ECF No. 13-3, however, contains the "Statement of Facts," while ECF No. 13-2 is the "Memorandum in Support." The Court will refer to ECF No. 13-3 as "Def.'s Facts" and to ECF No. 13-2 as "Def.'s Mem."

[4] The plaintiff was not an employee of the Kennedy Center or the federal government at any time relevant to this action. *See* Def.'s Facts ¶ 4; Pl.'s Opp'n at 2.

wheelchair in its entirety ("excluding additional weight of clothing, bags, or other personal effects") was nearly 500 pounds.  Def.'s Facts ¶¶ 9-10 (citing Fernandez Report at 8-10, 14).

The only way for the plaintiff to reach her place of employment on the second tier of the Kennedy Center was to use the Garaventa GSL-1 model wheelchair lift.  *See* Def.'s Facts ¶¶ 11-13 (citations omitted); Pl.'s Opp'n at 2; Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), ECF No. 13, at 4.[5]  "The GSL-1 lift consisted of a wall-mounted track to which was affixed a platform that ran along the track and lifted the user above the stairs."  Def.'s Mem. at 4 (citing Fernandez Report at 6 (Fig. 2), 13 (Fig. 8)).  The platform was equipped with ramps — or platform lips — "at its front, side, and rear," as well as "with two bar guard safety arms at the front and rear of the lift."  Def.'s Mem. at 5; Def.'s Facts ¶¶ 18-19 (citing Fernandez Report at 6, 13).  The weight capacity limit of this lift is 450 pounds.  *See* Def.'s Mem. at 4 (citing Fernandez Report at 4).

The plaintiff "could not use the lift without the assistance of another person because it was operated by a control panel mounted on the wall at the top of the stairs near the entrance to the SD&A office."  Def.'s Mem. at 5 (citing Owen Dep. at 42-44); Def.'s Facts ¶ 20 (same).  "Using the wall-mounted control panel, the person assisting [the plaintiff] . . . would insert a key into the control panel to turn on the platform controls of the lift."  Def.'s Mem. at 5; *see also* Def.'s Facts ¶ 22 (citing Deposition of Amy Sloan ("Sloan Dep."), ECF No. 13-6, at 15).  The plaintiff would then drive her wheelchair onto the platform.  *See* Def.'s Mem. at 4; *see also* Def.'s Facts ¶ 17 (citing Owen Dep. at 44-45).  "Once [the p]laintiff was in place on the platform, the control panel operator would then press a button that engaged the lift's safety

---

[5] The description of the features of the lift are taken from Def.'s Mem., ECF No. 13-2, at 4-6.  The plaintiff agreed with this description.  *See* Pl.'s Opp'n at 2 ("The stairs had a wheelchair lift, accurately described in the . . . Defendant's Memorandum at 4-6.").  The Court assumes that the plaintiff refers to the defendant's Memorandum, ECF No. 13-2, and not the defendant's Statement of Facts, ECF No. 13-3, based on the page numbers cited and the contents of the documents.  *See supra* note 3.

3

features." Def.'s Mem. at 5 (citing Owen Dep. at 45); Def.'s Facts ¶ 23 (same). "[T]he lift would then begin to operate and the platform would move along the track and deliver [the p]laintiff to the end of the track at the top of the stairs." Def.'s Mem. at 5; Def.'s Facts ¶ 27 (citing Owen Dep. at 42-45). "The control panel operator would then turn the key again, which would disengage the bar guard safety arms and platform lips, allowing [the p]laintiff to drive off the lift platform." Def.'s Mem. at 5-6; Def.'s Facts ¶ 28 (citing Sloan Dep. at 15-16).

During the plaintiff's period of employment with SD&A,[6] she experienced recurring problems with the lift as it sometimes stalled or "stopped mid-route, trapping the [p]laintiff until the lift could be re-started." Pl.'s Opp'n at 2 (citing Owen Dep. at 55-57; Sloan Dep. at 18-24). "With regularity — at least once weekly — the lift would stall out when [the p]laintiff was riding it." Def.'s Facts ¶ 29 (citing Owen Dep. at 55-56; Sloan Dep. at 18-21, 24). "Sometimes the lift could be restarted after waiting a while; other times, Kennedy Center technicians would have to be summoned to repair the lift while [the p]laintiff remained on it." Def.'s Facts ¶ 30 (citing Owen Dep. at 56; Sloan Dep. at 22-23, 29). Though the Kennedy Center "properly maintained" and "serviced" the lift on multiple occasions "when the need arose," the plaintiff continued to experience these problems and made several complaints regarding its operation. Def.'s Facts ¶ 15 (citing Fernandez Report at 7, 14); Def.'s Facts ¶ 29; Pl.'s Opp'n at 3. One stalling incident occurred where the plaintiff and her wheelchair had to be physically removed from the lift because the lift would not restart. *See* Def.'s Facts ¶ 31 (citing Owen Dep. at 57; Sloan Dep. at 23).

About three months before the incident in question, the Kennedy Center's Director of

---

[6] The record is inconsistent about how long the plaintiff worked for SD&A at the Kennedy Center. In the plaintiff's answers to the defendant's interrogatories, she suggests she was an employee only for "a couple of months," *see* Def.'s Mot. Summ. J., ECF No. 13-4, Ex. C (Pl.'s Answers to Def.'s Interrogatories ("Pl.'s Answers")) ¶ 1, while other places in the record suggest that she was there longer. *See* Pl.'s Opp'n at 6 (noting that employees observed the wheelchair lift malfunctioning three months before the August 2008 incident).

Accessibility, Betty Siegel ("Director of Accessibility"), "met with [the p]laintiff and inspected and tested the lift." Def.'s Facts ¶ 32 (citing Declaration of Betty Siegel ("Siegel Decl.") ¶¶ 5-9); *see also* Pl.'s Opp'n at 6 ("[The plaintiff] met with . . . Betty Siegel, on or about May 21, 2008" and the "[p]laintiff, Ms. Siegel, and [two] other employees of the Kennedy Center witnessed the wheelchair lift both malfunctioning and functioning properly.").[7] The Director of Accessibility "then asked [the p]laintiff to inform her" of the plaintiff's weight and the weight of the wheelchair so that the Director could assess her safety on the lift. Def.'s Facts ¶ 35 (citing Siegel Decl. ¶ 9); *see also* Pl.'s Opp'n at 6 ("According to the email, Ms. Siegel alleges that the [sic] asked the [p]laintiff for the combined weight of the [p]laintiff and her chair."). The plaintiff "promised to provide [the Director of Accessibility] with this information but never did." Def.'s Facts ¶ 36 (citing Siegel Decl. ¶ 9); *see also* Pl.'s Opp'n at 6 ("There is no record of any follow-up."). In fact, the combined weight of the plaintiff and her wheelchair "exceeded the weight capacity limit of the wheelchair lift by almost 50 pounds." Def.'s Facts ¶ 37 (citing Fernandez Report at 11-12).

On the evening of August 29, 2008, the plaintiff again used the lift. *See* Def.'s Facts ¶ 38. The lift malfunctioned, and "[a]t some point during her use of the lift either [the p]laintiff or the co-worker assisting her[8] manually raised the safety bar guard [arm] located behind [the p]laintiff at the rear of the lift platform." Def.'s Facts ¶¶ 38-39 (citing Fernandez Report at 12).[9]

---

[7] The Defendant's Statement of Facts sometimes cites to the Declaration of Betty Siegel, which the defendant did not attach to any of its filings. The Declaration is therefore not part of the record. Most of the factual statements from the Defendant's Statement of Facts, which cite this missing Declaration and are included in this Opinion, are repeated — though not supported by a record cite — in the Plaintiff's Memorandum in Opposition.

[8] The co-worker "is the only other eyewitness to the incident and could not be located by either party" in the course of discovery. Def.'s Mem. at 7 n.6.

[9] "The lift will not operate when the safety arms are in their vertical, upright positions." Def.'s Facts ¶ 25 (citing Sloan Dep. at 15; Fernandez Report at 6). "If the lift were, for whatever reason, to stop mid-course, the safety arms would remain locked in their engaged, horizontal positions; the only way for the user to get off the lift in such a

The plaintiff and her wheelchair then "toppled over, backwards, off the lift platform and onto the floor." Def.'s Facts ¶ 40 (citing Fernandez Report at 12); *see also* Pl.'s Opp'n at 3.[10] The co-worker went for help at the SD&A offices, and the plaintiff's supervisor called Kennedy Center security personnel. *See* Def.'s Facts ¶¶ 41-42 (citing Sloan [Dep.] at 26-27).

Following this incident, the plaintiff submitted a Standard Form 95 to the General Counsel's Office at the Kennedy Center on April 23, 2009 seeking $5,000.00 in property damages and $1,000,000.00 in personal-injury damages.[11] *See* Pl.'s Opp'n at 3; Def.'s Facts ¶ 43; Def.'s Mot. Summ. J., ECF No. 13-4, Ex. D (Letter from Andrew Bederman, Esq., to JoEllen Dinges, Esq. (Apr. 23, 2009) ("Bederman Letter")). The plaintiff, however, did not submit with this Form any medical records or other documentation to support her claim. *See* Def.'s Facts ¶

---

situation would be manually to override the safety arms and yank one or both of them back into their vertical, upright positions." Def.'s Facts ¶ 26 (citing Sloan Dep. at 15; Fernandez Report at 6).

[10] The plaintiff contends that she was "thrown from the lift platform," *see* Pl.'s Opp'n at 3, but due to loss of consciousness or memory loss she cannot recall what transpired, *see* Def.'s Mem. at 7 n.5 (citing Owen Dep. at 75, 77); *see also* Pl.'s Answers ¶ 6 ("[T]he lift came to a sudden stop. Plaintiff's next clear memory is lying on the floor at the bottom of the stairs with her wheelchair on top of her."). Since the safety arms were manually raised, however, the defendant contends that the plaintiff must have "dr[i]ve[n] her wheelchair up over the engaged platform lip . . . with the result that she and her wheelchair toppled over, backwards, off the lift platform." *See* Def.'s Facts ¶ 40 (citing Fernandez Report at 12).

[11] According to the U.S. Department of Justice:

> Standard Form 95 is used to present claims against the United States under the [FTCA] for property damage, personal injury, or death allegedly caused by a federal employee's negligence or wrongful act or omission occurring within the scope of the employee's federal employment. These claims must be presented to the Federal agency whose employee conduct gave rise to the injury.
>
> Standard Form 95 is not required to present a claim under the FTCA, but it is a convenient format for supplying the information necessary to bring an FTCA claim . . . Form 95 must be presented to the appropriate federal agency within <u>two years</u> after the claim accrues.

*Civil Division Documents & Forms*, U.S. DEP'T JUSTICE, http://www.justice.gov/civil/common/docs-forms.html (last visited Oct. 17, 2012) (emphasis in original).

44; Bederman Letter. On March 12, 2010, the Kennedy Center denied the plaintiff's claim. *See* Def.'s Facts ¶ 45.[12]

The plaintiff then filed a Complaint in the United States District Court for the District of Columbia.[13] During discovery, the plaintiff filed a Rule 26(a)(1) Statement listing relevant documents as well as names of relevant witnesses, *see* ECF No. 7, as well as a Rule 26(a)(2) Statement with the names of two medical experts, both treating physicians of the plaintiff, *see* ECF No. 8. Although the plaintiff alleged that the experts would testify as to the extent of her injuries as well as to the cause of them (her fall on August 29, 2008), ECF No. 8 ¶¶ 1-2, the plaintiff did not submit medical records or any other documents. On July 15, 2011, the defendant submitted its Rule 26(a)(2) expert report by engineer Jeffrey E. Fernandez, PhD, PE, CPE, which contains his analysis of the wheelchair lift and the resulting incident. ECF No. 12.[14] In his report, Dr. Fernandez concluded that (i) the lift "will fail to operate" if the weight — as in the case of the plaintiff plus her wheelchair — exceeds 450 pounds; (ii) "[t]he bar guard safety-arm was manually raised and the wheelchair user intentionally drove over the platform lip"; and (iii) "[t]he Kennedy Center performed maintenance and repairs as needed on the lift." Fernandez Report at 18.

---

[12] The body of the letter sent on March 12, 2010, from Kennedy Center Assistant General Counsel JoEllen Dinges, Esq., to the plaintiff's counsel, Andrew Bederman, Esq., reads in its entirety:

> We have considered, under the [FTCA], the claim for [the plaintiff] that you filed with [the Kennedy Center] for an incident that occurred at the Kennedy Center on August 29, 2008. We are writing to inform you, as [the plaintiff's] personal representative, that this claim is hereby denied. If your client is dissatisfied with this determination, she may submit a written request for reconsideration based on new evidence, or she may file suit in an appropriate United States District Court not later than six months after the date of mailing of this letter.

Def.'s Mot. Summ. J., ECF No. 13-4, Ex. E.

[13] This case was originally assigned to Judge Roberts, but was later randomly assigned to the under-signed Judge on January 21, 2011.

[14] This document is also attached to the defendant's Motion for Summary Judgment. *See* ECF No. 13-7.

The defendant then moved for summary judgment. *See* ECF No. 13.

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact." *Id.* at 323.

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party, and shall accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255; *Estate of Parsons*, 651 F.3d at 123; *Tao*, 27 F.3d at 638. The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record." FED. R. CIV. P. 56(c)(3). For a factual dispute to be "genuine," *Estate of Parsons*, 651 F.3d at 123, the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position, *Anderson*, 477 U.S. at 252, and cannot simply rely on allegations or conclusory statements, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See Anderson*, 477 U.S. at 250. "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## III. DISCUSSION

In its motion for summary judgment, the defendant argues that the plaintiff has failed to make out a *prima facie* case of negligence because she did not put forth any expert testimony as to the maintenance and operation of the wheelchair lift as required to establish a standard of care for negligence claims under District of Columbia common law ("D.C. law"), and, furthermore, that the doctrine of *res ipsa loquitur* does not absolve the plaintiff of this requirement. *See* Def.'s Mem. at 12, 17; Def.'s Reply in Supp. of Mot. for Summ. J., ECF No. 17 ("Def.'s Reply"), at 9-10.[15]  In response, the plaintiff contends "that expert testimony on the standard of care is unnecessary" because the defendant "violated its duty to inspect and repair a problem, when repeatedly put on notice," Pl.'s Opp'n at 1, 7, and "*res ipsa loquitur* allows the trier of fact to infer a lack of due care *from the mere occurrence* of an accident," Pl.'s Opp'n at 8 (emphasis in original) (internal quotation marks omitted).[16]  Since the plaintiff has not established the applicable standard of care and cannot state a claim for negligence under D.C. law, the Court must grant the defendant's motion for summary judgment.

---

[15] The defendant argues in addition that (i) the plaintiff's "own negligence proximately contributed to her injuries" and thus completely bars recovery of damages, *see* Def.'s Mem. at 13-16; and, relatedly, that (ii) the doctrine of *res ipsa loquitur* does not apply because the plaintiff proffers no evidence suggesting that the incident is "of the kind which ordinarily does not occur in the absence of someone's negligence," and because record evidence suggests that the plaintiff's voluntary conduct caused her injuries, *see id.* at 16-17.  The Court need not resolve the issue of the plaintiff's contributory negligence, which would work to bar both her negligence claim as well as her claim that *res ipsa loquitur* applies, since this case is resolved on different grounds.

[16] The plaintiff also argues summarily in her Opposition to the instant motion that the guidelines promulgated under the Americans with Disabilities Act ("ADA") establish a standard of care regarding the provision and maintenance of the lift.  *See* Pl.'s Opp'n at 5-6.  She does not raise this argument in her Complaint, and cites no authority for it.  Even assuming, *arguendo*, that the plaintiff's argument were correct, she has offered no expert testimony regarding how that standard of care applies to the particular facts in this case and how any breach of such standard of care proximately caused the plaintiff's injury.

### A.     Legal Standard for the FTCA and Negligence under D.C. Law

"In the FTCA, Congress waived the United States' sovereign immunity for . . . 'claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008) (quoting 28 U.S.C. § 1346(b)(1)). The FTCA "authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *United States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)); *accord Paige v. Drug Enforcement Admin.*, 665 F.3d 1355, 1362 (D.C. Cir. 2012).

"To establish negligence, 'the plaintiff has the burden of proving by a preponderance of the evidence the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury.'" *Robinson v. Wash. Metro. Area Transit Auth.*, No. 11-cv-0723, 2012 U.S. Dist. LEXIS 60306, at *11 (D.D.C. May 1, 2012) (quoting *Varner v. Dist. of Columbia*, 891 A.2d 260, 265 (D.C. 2006)); *see also Convit v. Wilson*, 980 A.2d 1104, 1123 (D.C. 2009); *Hill v. Metro. African Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001); *Messina v. District of Columbia*, 663 A.2d 535, 537 (D.C. 1995).

To satisfy the first prong, the "plaintiff must put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Convit*, 980 A.2d at 1123; *Hill*, 779 A.2d at 908; *Dist. of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000). "There is, however, a partial exception to this rule," which is that "no expert testimony is needed if the

subject matter is within the realm of common knowledge and everyday experience." *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007) (citation omitted). In fact, D.C. courts have "required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge." *Id*. "For example, the [D.C. Court of Appeals] has held that the following subjects require expert guidance despite the fact that they might be familiar to jurors: maintenance of leaning trees; application of hair relaxer; tightness of handcuffs; cushioning for the ground underneath playground monkey bars; maintenance of street lights to prevent falling light globes; time frame for ordering building materials on a construction project; response when an arrestee is found hanging in his cell; and installation of a crosswalk, instead of a stop sign, light, or crossing guard." *Id*. (citations and quotation marks omitted). Thus, "[t]he case law indicates that the 'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required." *Id*.

A plaintiff's failure to provide expert testimony to establish a standard of care where she was required to do so would be fatal to her negligence claim. *See Burke v. Air Serv. Int'l, Inc.*, 685 F.3d 1102, 1106 (D.C. Cir. 2012) (noting that "under D.C. law, failure to establish the standard of care is fatal to a negligence claim" (internal quotation marks omitted)); *Flax v. Schertler*, 935 A.2d 1091, 1106-07 (D.C. 2007) (upholding summary judgment granted to defendant because "fatal flaw in [plaintiff's] case was the lack of an expert witness who would opine that the [defendants] breached the standard of care"); *see also Clark v. Dist. of Columbia*, 708 A.2d 632, 634 (D.C. 1997) (affirming a directed verdict for the defendant where the "appellant's expert failed to provide sufficient testimony that the District violated a national standard of care").

> **B.     The Plaintiff Was Required to Proffer Expert Testimony Concerning the Maintenance and Operation of a Wheelchair Lift and Failed to Do So.**

In her Complaint, the plaintiff alleged that the defendant owed her "a duty [to] ensure that the wheelchair lift was properly maintained and repaired in a safe manner, with reasonable care and prudence." Compl. ¶ 8. She specifies that the defendant "breach[ed]" this duty when it "operated and maintained the wheelchair lift in a negligent manner and carelessly failed to properly inspect and repair the malfunctioning lift, properly operate the wheelchair lift while the [p]laintiff was using it, failing to warn disabled patrons of a malfunctioning wheelchair lift, and otherwise being negligent." *Id.* ¶ 9. These allegations plainly rely upon the breach of a standard of care regarding the proper maintenance and repair of a wheelchair lift.

Nevertheless, the plaintiff has proffered no expert testimony regarding the myriad issues surrounding the safety of wheelchair lifts. Under D.C. law, as noted, courts have "required expert testimony regarding the applicable standard of care, unless the subject matter is 'within the realm of common knowledge and everyday experience.'" *Arnold & Porter*, 756 A.2d at 433; *see also Briggs*, 481 F.3d at 845; *Otis Elevator Co. v. Tuerr*, 616 A.2d 1254, 1257 (D.C. 1992); *accord Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (noting that "[r]ecently. . . the D.C. Court of Appeals has required expert testimony in a wider variety of cases, even in those that might initially seem to fall within jurors' common knowledge" and "expert testimony is routinely required in negligence cases . . . which involve issues of safety, security and crime prevention.") (internal citations and quotation marks omitted); *D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 864-65 (D.C. 2009) (finding that expert's testimony in negligence case involving an elevator accident "was adequate to establish the applicable standard of care").

In this case, the Court finds that the care and maintenance of a wheelchair lift are not within the "common knowledge and everyday experience" of jurors, and the plaintiff must set

12

forth expert testimony as to the applicable standard of care. As the defendant indicates, "[h]ow a wheelchair lift operates, how it might malfunction, how its safety features can be overridden, or how a rider could be injured thereby are obviously not matters within the realm of common knowledge." Def.'s Mem. at 12. The plaintiff should therefore have proffered an expert witness to establish the standard of care for the defendant's maintenance and care of the wheelchair lift. *See Davis v. Bud & Papa, Inc.*, No. 11-cv-1001, 2012 U.S. Dist. LEXIS 110775, at *7-8 (D.D.C. Aug. 8, 2012) (noting that expert testimony is required when "the subject matter is too technical for the lay juror") (quoting *Dist. of Columbia v. Hampton*, 666 A.2d 30, 36 (D.C. 1995)); *see also Burke v. Air Serv Int'l, Inc.*, 775 F. Supp. 2d 13, 20 (D.D.C. 2011) (noting that the rule requiring expert testimony to establish a standard of care "has been applied in a wide variety of cases, 'even in those that might initially seem to fall within jurors' common knowledge'") (quoting *Godfrey*, 559 F.3d at 572).

While the plaintiff proffered two expert witnesses, both of the witnesses are the plaintiff's physicians who were named to testify as to the nature of the plaintiff's injuries and medical treatment. *See* ECF Nos. 7-8. No expert witnesses were named to establish a national standard of care for the maintenance of wheelchair lifts, nor were expert witnesses named who could testify as to the causal link between the defendant's alleged negligence and the plaintiff's injuries. The plaintiff's claims therefore cannot survive the defendant's motion for summary judgment.

The plaintiff argues unavailingly that no expert testimony is required in this case and that "it was [the Kennedy Center's] failure to properly investigate the source of the occasional malfunctions (incidents of the same substantive character as the incident on or about August 29, 2008) that gives rise to liability." Pl.'s Opp'n at 6. Without expert testimony, however, the

plaintiff cannot allege that the incident giving rise to the lawsuit was "of the same substantive character" as the prior stalling of the lift. *Compare Tuerr*, 616 A.2d at 1257-58 (expert testimony that two elevator accidents "were related" plus defendant's failure to comply with government regulations was sufficient to establish negligence),[17] *with Dist. of Columbia v. Billingsley*, 667 A.2d 837, 842 (D.C. 1995) (Despite earlier sewer system problems, "[s]uch an inference [that negligent maintenance was the cause of the flooding of the plaintiff's basement] would be highly speculative, particularly considering the immediate abatement of the problem, the length of the intervals between each of the backups, and the testimony about the various outside sources from which such debris could enter the sewer system. The jury is not permitted to engage in such mere speculation or conjecture."). This allegation of "substantive similarity" is also unpersuasive because the lift on previous occasions had only stopped mid-route. The plaintiff has offered no evidence that safety arms had lifted on previous occasions, nor that the plaintiff had ever fallen from the lift.

The plaintiff also argues that the "[d]efendant was duty bound to inspect and investigate reported malfunctions" without presenting any evidence of the defendant's failure to do so. Pl.'s Opp'n at 6. The Kennedy Center did in fact "maintain" and "service" the lift on multiple occasions "when the need arose." Def.'s Facts ¶ 15 (citing Fernandez Report at 7, 14); *see also* Def.'s Facts ¶ 30 ("Kennedy Center technicians would have to be summoned to repair the lift while [the p]laintiff remained on it.") (citing Owen Dep. at 56; Sloan Dep. at 22-23, 29).

---

[17] In *Tuerr*, the court concluded that "an elevator maintenance contractor owes at least a duty to exercise reasonable care to those who ride on the elevator." *Tuerr*, 616 A.2d at 1259. This holding was premised in part on the elevator company's failure to comply with the "particular regulatory or statutory requirement," namely the company's failure to file a prior incident report with the D.C. Department of Consumer and Regulatory Affairs as required by law, that was "enacted to prevent the type of accident which occurred here," *id.* If the particular regulation establishes a standard of care, then an "unexplained violation of that regulation will render a defendant liable as a matter of law if a plaintiff can establish that he or she is within the ambit of the statute." *Id.* While the plaintiff points to the ADA as establishing a standard of care, *see supra* note 16, the plaintiff has not established that the defendant failed to comply with the ADA.

Without expert testimony as to how the Kennedy Center's efforts failed to meet the applicable standard of care for maintenance and care of wheelchair lifts, the plaintiff's claim for negligence fails.

### C. The Plaintiff Still Must Proffer Expert Testimony Even If *Res Ipsa Loquitur* Were Applicable.

Finally, the plaintiff cannot sustain her claim and evade the need for expert testimony by proceeding under a theory of *res ipsa loquitur*. *See* Pl.'s Opp'n at 8-9. "[I]t is still the law of the District of Columbia that the party who seeks to rely on *res ipsa loquitur* must establish that the cause of an accident is (1) known, (2) in the defendant's control, and (3) unlikely to do harm unless the person in control is negligent." *Londono v. Wash. Metro. Area Transit Auth.*, 766 F.2d 569, 571 (D.C. Cir. 1985) (quoting *Wash. Sheraton Corp. v. Keeter*, 239 A.2d 620, 622 (D.C. 1968)) (internal quotation marks omitted); *see also Casanova v. Marathon Corp.*, 570 F. Supp. 2d 53, 57-58 (D.D.C. 2008) (finding that "[s]ignificantly, the cause of the accident must be known before we can determine that the causal instrument was within the exclusive control of the defendant and that the injury was not due to an act of the plaintiff.") (citation and internal quotation marks omitted). Thus, *res ipsa loquitur* "does not come into play in cases where the cause of the accident is unknown." *Jones v. Safeway Stores, Inc.*, 314 A.2d 459, 461 (D.C. 1974).[18] That is exactly the problem here: the plaintiff maintains that the lift must have "malfunctioned" in some way to cause her to fall, Pl.'s Opp'n at 7; the defendant argues that the plaintiff lifted the safety arm and voluntarily propelled her wheelchair over the platform lip to

---

[18] The plaintiff misconstrues *Otis Elevator Co. v. Henderson*, 514 A.2d 784 (D.C. 1986), when she states that "if the specific mechanical defect was known, the [*res ipsa loquitur*] instruction would be unnecessary." Pl.'s Opp'n at 9. In that case, "the right elevator door closed on [the plaintiff] and hit her shoulder" but "did not retract immediately." *Otis Elevator Co.*, 514 A.2d at 785. The plaintiff's expert witness in fact testified that "any one or more of a number of specific mechanical defects could have led to these results" but could not specify the exact failing. *Id.* There, the doctrine of *res ipsa loquitur* applies because the accident can be ascribed to a particular cause (elevator defect, as described by the expert witness), but not specifically to a particular mechanical defect. *Id.* at 785. Here, the causes of the plaintiff's wheelchair lift accident are unknown.

get off the lift and subsequently toppled over, *see* Def.'s Mem. at 15; Fernandez Report at 12-13; *supra* note 10. In fact, the plaintiff explicitly calls attention to this deficiency in ascribing causation: "It should be stated that the exact nature of the malfunction on or about August 29, 2008 is unknown to either party." Pl.'s Opp'n at 7; *supra* note 10. No other available witness saw the incident and the plaintiff does not remember it. *See supra* notes 8-10; Owen Dep. at 75, 77; Pl.'s Answers ¶ 6. "[W]hen the facts are complicated," the D.C. Court of Appeals has said that it "generally require[s] the plaintiff to produce expert testimony to lay the foundation for invoking *res ipsa loquitur*." *Pinkney*, 970 A.2d at 868 (citing *Quin v. George Wash. Univ.*, 407 A.2d 580, 583 (D.C. 1979)); *see also Scott v. James*, 731 A.2d 399, 404 (D.C. 1999) ("[*Res ipsa loquitur*] may be invoked only where a lay person can infer negligence as a matter of common knowledge, or where expert opinion is presented that such accidents do not occur in the absence of negligence.") (citations and internal quotation marks omitted).[19] For this reason, even *res ipsa loquitur* does not absolve the plaintiff of her need to proffer expert testimony to succeed on her negligence claim under D.C. law.

## IV. CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is GRANTED. An appropriate Order shall accompany this Memorandum Opinion.

**DATED: October 22, 2012**

                                              /s/ *Beryl A. Howell*
                                              BERYL A. HOWELL
                                              United States District Judge

---

[19] The plaintiff's reliance on *McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256, 1259 (D.C. 1983), for the proposition that "*res ipsa loquitur* allows the trier of fact to infer a 'lack of due care from the *mere occurrence* of an accident'" is misplaced. Pl.'s Opp'n at 8 (emphasis in original). In *McCoy*, the plaintiffs offered evidence supporting genuine issues of material fact "which should have been submitted to the jury." *McCoy*, 470 A.2d at 1259. Here, the plaintiff has offered no such evidence.